[No. 18009.   *En Banc.*   January 4, 1924.]

ROSE USTLER, *Appellant,* v. G. H. USTLER, *Respondent.*[1]

DIVORCE (104)—CUSTODY OF CHILDREN—MODIFICATION OF DECREE. The discretion of the trial court in refusing to modify a decree of divorce awarding the custody of two girls, seven and nine years of age, to their father, will not be disturbed on appeal where it appears that he had placed the girls in a college or boarding school and that their welfare will be best served by leaving them there (MAIN, C. J., and PEMBERTON, J., dissenting).

Appeal from an order of the superior court for Clallam county, Ralston, J., entered October 27, 1922, denying a petition to modify a decree of divorce respecting the custody of children, after a hearing before the court. Affirmed.

*James P. H. Callahan,* for appellant.

*T. F. Trumbull* and *Frank L. Plummer,* for respondent.

TOLMAN, J.—The parties to this action were divorced by a decree dated March 20, 1919, which, among other things, recited and provides that the divorce is granted to respondent on his cross-complaint, and he is awarded the custody of the two minor children until the further order of the court, with the right in the wife, appellant here, to visit them at all reasonable times. Thereafter, by a petition filed September 15, 1922, appellant sought a modification of the decree so that the custody of the children would be placed in her, with a provision that the respondent make suitable contribution for their support and maintenance while in her care.

The issues raised by the petition and the answer thereto denying the material facts charged came on for trial before the judge who tried the divorce action, and

[1]Reported in 221 Pac. 577.

after an extended hearing, the prayer of the petition was denied and the original decree in all things confirmed. From this order, the plaintiff has appealed.

The case involves questions of fact only, and after a reading of the entire record and a careful weighing of the evidence thus revealed, we can find nothing of a convincing nature which indicates that the trial court reached a wrong conclusion. No good purpose would be served by setting forth and attempting to analyze the evidence. It reveals a not unusual situation, resulting in a broken home, the unhappy results of which are visited to a large extent upon the children, and their best welfare is the only thing which now concerns us.

The evidence shows without dispute that, at the time of the hearing below, the father had placed these little girls in a college or boarding school for girls in Seattle, maintained and conducted under the auspices of the Methodist Church, which, after investigation and visiting several other such institutions, he concluded was the best of its kind. There is no contravention of the facts that there the little girls are physically well, better than ever before, are happy and contented, and making good progress in their studies.

While a popular prejudice has existed against boarding schools ever since Dickens delineated the cruelties of ''Dotheboys Hall,'' we know that there can be, and assume that there are institutions of the kind which properly fulfill their functions, of which this is one. We cannot say that these children, having, through no fault of their own, lost their natural home, governed and protected by the loving care of both parents, are not as well situated in the school referred to as it is possible for them to be under existing circumstances.

There being nothing to indicate that the trial court abused its discretion, and the weight of the evidence

tending to sustain its holding to the effect that the welfare of the children will be best served by continuing their custody in respondent, the judgment appealed from must be and is affirmed.

HOLCOMB, FULLERTON, PARKER, BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.

PEMBERTON, J. (dissenting)—This is a contest over the custody of the two minor children of appellant and respondent, Helen Ustler, age nine, and Lucy Ustler, age seven. A decree of divorce was entered on March 20, 1919, granting the husband (respondent) a divorce upon the ground set forth in finding of fact number 3, as follows:

"That the plaintiff and defendant are utterly and completely incompatible in temperament; have totally and completely different views; that there has been continuous altercation, bickering and quarrelling and personal criticism of each other for the past three years; that the parties are unsuited and unable to live together as husband and wife."

In this decree the court awarded to the father all of the real estate and personal property, in the value of about $3,000, belonging to the community, and gave the father the custody of the children. The mother, having no home, did not insist upon the custody. One of the children became ill soon after the granting of the decree, and the mother, being requested by telegram, returned to the home to nurse the child and remained in the home until January 3, 1920. She received compensation for her services during this period, with the exception of about two weeks' time. On July 2, 1919, while residing at the home, the mother gave birth to a child, three months and twelve days after the date of the decree of divorce. On January 3, 1920, the mother intermarried with J. A. Baker, and

with the father's consent, at that time took the two girls with her to her new home and retained their custody for the past three years, with the exception of the school vacation during the summer of each year they were with the father. In the fall of the year 1922, the father denied the request of the mother for the children and placed them in Pacific College. The father, during this period while the children were in the custody of the mother, paid $50 or more per month for their support.

At the time of the trial, the court made the following statement:

"In reviewing this case, here was a family, two small children, girls, and something occurred which caused an unhappiness in the home, and the mother filed a complaint for divorce alleging incompatibility, and the husband cross-complained alleging the same grounds, and on the final hearing of both sides the court granted the decree to the husband with the custody of the children, two girls, without any alimony for support in any way. *That is three years ago and the testimony here tends to show that the father has permitted these girls to go and live with their mother part of the time, most of the time, since the divorce was granted,* he paying to the mother a reasonable amount, more than what persons possibly do in this kind of a case. This year, the father wants to send these children to an independent school, and has done so, and the mother comes in and wants the judgment modified. *The evidence goes to show that the mother has married Mr. Baker who evidently is a bright man, an educated man and who is now earning good wages, there is no question from the testimony that he is a good husband to Mrs. Baker and a kind father in so far as I can see has been good to these children in this home.* On the other hand, the father of the children is here, he is unmarried, and wants his children, and does not want them down there in that home.

"There has been a good deal of evidence as to the early acquaintance of the present Mrs. Baker and Mr. Baker, *and not finding that there were any wrong relations in so far as going to the extreme is concerned,* there is no question in the court's mind, as I see it now, there is no question in the court's mind that Mr. Baker broke up this home, and this mother, she may be more happy with Mr. Baker than with Mr. Ustler, he may have been a harsh husband at times, he might have been lacking in the little things that go to make a woman happy, he may have provided well financially and failed in the smaller things, still it does not hardly seem possible that this marriage of the present Mr. and Mrs. Baker the day after the prohibited length of time to Mr. Baker had expired, that that could have come about without some courtship of some kind. That is against all rules and customs of modern life or any life that we know of. Those things are possible but very improbable. I am not questioning the fact but that Mr. and Mrs. Baker would be kind to these children but if the court takes these children from the custody of the father and gives them to the custody of the mother and to the man who was the cause of breaking the home up it would not seem right in this case. I know that I have in some cases given the children to the mother, even extreme cases where I have found the mother guilty of the extreme offense of adultery. If you want to argue the case these are the facts as the court sees them.    . . .

"And then take his divorce and put the whole thing together as we have it now and I cannot see it different, I cannot think otherwise than that these people were attached to each other, and perhaps they were supposed to be together, I am not prepared to say, *but you want me to give these children to the mother, and Mr. Ustler is out in the cold.*    . . .

"I can never forget it. I do not want to do Mrs. Baker an injustice, she is apparently doing her best to do what is right today, but I can never forget the situation when a mother of two young girls was apparently absolutely indifferent as to their custody and Mr. Ustler at that time seemed to be lost. To be frank with

you Mr. Callahan, *I believe that if Mrs. Baker was marriageable today that he would marry her today.*"

It seems that the court lost sight of what was to the best interests of the children and determined the question of their custody largely upon the assumption that a wrong had been done to Mr. Ustler by their mother and her present husband. The court fails to find that the mother, prior to the divorce, or at any other time, was guilty of immoral conduct. In fact, he finds to the contrary. The trial court also finds that the home of the mother is a proper and suitable home for these children and does not question but what Mr. and Mrs. Baker would be kind to them, but says that, if he were to give the children to the mother, it would result in leaving Mr. Ustler "out in the cold." The court finds that Mr. Ustler would marry their mother now if she were marriageable, and he having consented to her custody, contrary to the order of the court, for a greater portion of the time during the last three years is a convincing fact that he is of the opinion that the mother is a proper person to care for his children. We said in the case of *Curtis v. Curtis,* 46 Wash. 664, 91 Pac. 188:

"The mother's right to the child must depend on her present conduct, and we find nothing in the evidence that impugns her character for morality and decency occurring since her marriage with the appellant."

In this case there is nothing that impugns her character for morality and decency at any time. The father is unable to provide a proper home for the children and therefore is sending them to the Pacific College. This college may be one of the best of its kind. These institutions, however, are for the care of children that have no father or mother ready, willing and able to care for them, and we should not substitute an institu-

tion for the home having a mother. The home is the basis of society. Statistics show that children reared in artificial homes lose the home instinct, and for that reason the expression "Be it ever so humble there is no place like home" applies when considering the best interests of children.

The judgment of the trial court should be reversed and the custody of these little girls of tender years should be given to the mother.

Main, C. J., concurs with Pemberton, J.